Barry N. Johnson (6255)
Eric G. Goodrich (11050)
Jarom R. Jones (16077)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
Email: bjohnson@btjd.com; egoodrich@btjd.com; jjones@btjd.com

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| TAUNJA LOVE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>OVERSTOCK.COM, INC.,<br><br>    Defendant. | **RULE 12(b)(3) MOTION TO DISMISS COMPLAINT AND COMPEL ARBITRATION**<br><br><br>Case No: 2:22-cv-00118-DBB<br><br>Judge David B. Barlow |

Defendant Overstock.com, Inc. ("***Overstock***"), through its counsel of record and in accordance with Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, hereby moves the Court to compel arbitration and to dismiss Plaintiff Taunja Love's ("***Love***") Complaint.

## RELIEF SOUGHT

The Court should compel Love to arbitrate her disputes and dismiss this action. There is a strong federal policy in favor of arbitration. In this case, Love signed not one but two employment agreements, both of which mandate that Love arbitrate her disputes with Overstock. Further, both employment agreements require that an arbitrator – as opposed to the Court – decide any issues of arbitrability. Instead of abiding by her employment agreements, Love filed her complaint in this Court. Overstock respectfully asks the Court to uphold the strong federal policy favoring arbitration, to compel Love to arbitrate her disputes, and to dismiss the complaint. The Court should grant the Motion.

## RELEVANT FACTS

1.      Love alleges that Overstock violated the Fair Labor Standards Act ("*FLSA*"), Washington Minimum Wage Act, Washington Wage Payment Act, and Washington Wage Rebate Act (the three latter statutes hereinafter referred to as the "*Washington Acts*"). *See generally* Complaint (Doc. 1).

2.      Overstock employed Love on two different occasions: first, from July 9, 2018 to January 23, 2019; and second, from April 21, 2020 to June 4, 2020. *See* Declaration of Marci Call ("*Call Decl.*") at ¶ 7, a true and correct copy of which is attached as **Exhibit A**.

3.      All new Overstock employees must complete onboarding paperwork, including an *Employment, Confidential Information and Invention Assignment, and Arbitration Agreement* (the "*Employment Agreement*"). *Id.* at ¶ 8.

4.      New employees who do not complete the onboarding paperwork, including the Employment Agreement, are not able to be hired or paid because they cannot be properly set up in Overstock's payroll system until all of their onboarding documents are completed. Overstock is also not willing to continue to employ individuals who do not complete its required onboarding paperwork, including the Employment Agreement. *Id.* at ¶ 9.

5.      Overstock maintains a copy of each employment document executed and submitted by Overstock's new employees. *Id.* at ¶ 10.

6.      On both occasions that Overstock employed Love, in conjunction with her employment with Overstock, Love signed the Employment Agreement. *Id.* at ¶ 11; 2018 Employment Agreement, a true and correct copy of which is attached hereto as **Exhibit B**; 2020 Employment Agreement, a true and correct copy of which is attached hereto as **Exhibit C** (together, the "*Employment Agreements*").

7.      Both Employment Agreements include matching "Arbitration and Equitable Relief" provisions separately initialed by Love, which state as follows:

> Except as provided in subsection (b) below, I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Utah in accordance with the rules then effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each

> pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.

*See* Ex. A (Call Decl.) at ¶ 11; Ex. B (2018 Employment Agreement) § 9(a); Ex. C (2020 Employment Agreement) § 9(a).

## **ARGUMENT**

Under the Federal Arbitration Act ("***FAA***"), "a written provision in any . . . contract . . . involving commerce to settle by arbitration a controversy thereafter arising . . . ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). The Supreme Court has repeatedly upheld the long-standing principle that federal courts are to "rigorously" enforce arbitration agreements. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621, 200 L. Ed. 2d 889 (2018). "There is a strong federal policy favoring arbitration for dispute resolution." *See Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 797 (10th Cir. 1995) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S. Ct. 3346, 87 L.E.2d 444 (1985)). "This presumption in favor of arbitrability also applies where a party bound by an arbitration agreement raises claims founded on statutory rights." *Id.* Likewise, the FAA specifically operates to require enforcement of arbitration agreements between employers and employees. *See Circuit City Stores, Inc. v. Adams*, 121 S. Ct. 1302, 1311 (2001).

Importantly, where the parties delegate threshold issues of arbitrability to an arbitrator, such as the validity or scope of the arbitration agreement, the arbitrator as opposed to the court must decide those issues. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1292 (10th Cir. 2017). As held by the Tenth Circuit, "we have repeatedly stated that courts reviewing arbitrability claims must first ask *who* should decide arbitrability, and suggested that only if the parties did *not* delegate questions of arbitrability to an arbitrator may courts reach the merits of arbitrability questions themselves." *Id.* at 1287 (emphasis in original). Indeed, "the First, Second, Fourth, Eighth, Ninth, Eleventh, and D.C. Circuits have all held that if a court finds evidence of clear and unmistakable intent to arbitrate arbitrability, it must allow an arbitrator to decide issues of arbitrability in the first instance." *Id.* at 1292.

The Tenth Circuit and "all of our sister circuits to address the issue have unanimously concluded that incorporation of the . . . AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability." *Id.* at 1283 (collecting authorities). This is so because both Rule 7 of the American Arbitration Association's (the "***AAA***") Commercial Arbitration Rules (the "***AAA Commercial Rules***") and Rule 6 of the AAA's Employment Arbitration Rules (the "***AAA Employment Rules***") each state, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement . . ." AAA Commercial R-7(a), *available at* https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited May 10, 2022); *see also* AAA Employment R. 6(a), *available at* https://adr.org/sites/default/files/Employment-Rules-Web.pdf (last visited May 10, 2022).

Consequently, "a finding of clear and unmistakable intent to arbitrate arbitrability—which may be inferred from the parties' incorporation in their agreement of rules that make arbitrability subject to arbitration—obliges a court to decline to reach the merits of an arbitrability dispute regarding the substantive claims at issue." *See Belnap*, 844 F.3d at 1290.

As shown by the above facts, an agreement to arbitrate exists between Overstock and Love in the form of the Employment Agreements. Specifically, Love signed not one but two agreements to arbitrate, as well as separately initialed two arbitration provisions. Likewise, Love's claims are arbitrable under the Employment Agreements. There can be no dispute that the two Employment Agreements signed and initialed by Love are valid. And Love's claims – alleging violations of the FLSA and the Washington Act – fall within the scope of the Employment Agreements' arbitration provisions, which broadly mandate the arbitration of "any dispute arising out of or relating to any interpretation, construction, performance or breach of this Agreement." At any rate, by incorporating "the rules then in effect of the American Arbitration Association," the Employment Agreements require that any threshold questions of arbitrability be decided by the arbitrator as opposed to the Court. Accordingly,

Overstock respectfully asks the Court to uphold the strong federal policy in favor of arbitration, to compel arbitration, and to dismiss the Complaint.[1]

## **CONCLUSION**

For these reasons, the Court should compel arbitration and dismiss the complaint.

Dated: May 10, 2022                                   Respectfully submitted,

_/s/ Eric G. Goodrich_
Barry N. Johnson
Eric G. Goodrich
Jarom R. Jones
*Attorneys for Defendant*

---

[1] *See, e.g., American Family Mutual Insurance Company v. Tamko Building Products, Inc.*, 178 F.Supp.3d 1121, 1129 (D. Colo. 2016) (internal citations omitted) ("Despite the seemingly mandatory language of section 3 of the FAA in this regard, the majority of federal courts hold that a case may be dismissed, rather than stayed, when all claims therein are arbitrable. Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when all claims are arbitrable and the movant specifically requests dismissal rather than a stay.")

**CERTIFICATE OF SERVICE**

The undersigned certifies that on May 10, 2022, the foregoing document was electronically filed with the Clerk of the Court by means of the Court's electronic filing system, which caused a copy to be served via email upon all counsel of record.

*/s/ Shauna Harmon*

# EXHIBIT A

# Declaration of Marci Call

Barry N. Johnson (6255)
Eric G. Goodrich (11050)
Jarom R. Jones (16077)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
Email: bjohnson@btjd.com; egoodrich@btjd.com; jjones@btjd.com

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| TAUNJA LOVE, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>OVERSTOCK.COM, INC.,<br><br>     Defendant. | **DECLARATION OF MARCI CALL**<br><br>**(In Support of Rule 12(b)(3) Motion to Dismiss Complaint and Compel Arbitration)**<br><br>Case No: 2:22-cv-00118-DBB<br><br>Judge David B. Barlow |

I, Marci Call, being over 18 years of age, hereby declare the following:

1.      I have been employed by Defendant Overstock.com, Inc. ("***Overstock***") for 23 years.

2.      I am currently Senior Director of Human Relations and have held that position since June 24, 2020.

3.      In my position as Senior Director of Human Relations, I am familiar with the policies, practices, and procedures relating to the hiring and onboarding of customer service representatives who are employed to work at Overstock's call centers.

4.      I am familiar with Overstock's business records relating to its call centers, including the employment records maintained by Overstock in relation to Plaintiff Taunja Love ("*Love*"). I understand that Taunja Love was known by the name Taunja Gainey while she was employed by Overstock, and that she subsequently changed her name to Taunja Love after getting married. Consequently, Overstock's employment records for Love refer to Taunja Gainey.

5.      I am familiar with the Rule 12(b)(3) Motion to Dismiss Complaint and Compel Arbitration (the "*Motion*") with which this declaration is being submitted.

6.      The exhibits attached to the Motion, including the 2018 Employment Agreement and the 2020 Employment Agreement, are true and correct copies of what they purport to be.

7.      Overstock employed Love on two different occasions: first, from July 9, 2018 to January 23, 2019; and second, from April 21, 2020 to June 4, 2020.

8.      All new Overstock employees, including customer service representatives hired to work in Overstock's call centers, must complete onboarding paperwork, including an Employment, Confidential Information and Invention Assignment, and Arbitration Agreement (the "*Employment Agreement*").

9.      New employees who do not complete the onboarding paperwork, including the Employment Agreement, are not able to be hired or paid because they cannot be properly set up in Overstock's payroll system until all of their onboarding documents are completed. Further, Overstock is not willing to continue to employ individuals who do not complete its required onboarding paperwork, including the Employment Agreement.

10.     Overstock maintains a copy of each employment document executed and submitted by Overstock's new employees.

11.     On both occasions that Overstock employed Love, in conjunction with her employment with Overstock, Love signed the Employment Agreement. *See* Ex. B to Motion (2018 Employment Agreement); Ex. C. to Motion (2020 Employment Agreement).

Dated this 9th day of May, 2022.


*/s/ Marci Call*
Marci Call

*(electronically signed by filing counsel with Ms. Call's express permission)*

3

# EXHIBIT B

# 2018 Employment Agreement

# OVERSTOCK.COM, INC.

## EMPLOYMENT, CONFIDENTIAL INFORMATION AND INVENTION ASSIGNMENT, AND ARBITRATION AGREEMENT

As a condition of my employment with the Overstock.com, Inc., a Utah corporation, with offices at 6350 South, 3000 East, Suite 100, Salt Lake City, Utah 84121, its subsidiaries, affiliates, successors and assigns ("Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company and the Company's agreement in Section 2(a), I agree to the following:

1. **At-Will Employment**. I understand and acknowledge that my employment with the company is for an unspecified duration and constitutes "at-will" employment. I also understand that any representation to the contrary is unauthorized and not valid unless obtained in writing and signed by the president of the company. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the company or myself, with or without notice.

2. **Confidential Information**.

   (a) **Company Information.**

   (i)     The Company agrees that, it will provide me with Confidential Information (defined below) of the Company that will enable me to optimize the performance of my duties to the Company. In exchange, I agree to use such Confidential Information solely for the Company's benefit. The Company and I agree and acknowledge that its provision of such Confidential Information is not contingent on my continued employment with the Company. Notwithstanding the preceding sentence, I agree that upon the termination of my employment in accordance with Section 1, the Company shall have no obligation to provide me with its Confidential Information. I understand that **"Confidential Information"** means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

Confidentiality

(ii)   I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the exclusive benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company.

(b) Former Employer Information.  I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) Third Party Information.  I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.  Inventions.

(a) Inventions Retained and Licensed.  I have attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as "Prior Inventions"), which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions.  If in the course of my employment with the Company, I incorporate into a Company product, process or machine a Prior Invention owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or machine.

(b) Assignment of Inventions.  I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in Section 3(f) below.  I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with

the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such invention.

(c) Inventions Assigned to the United States. I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d) Maintenance of Records. I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e) Patent and Copyright Registrations. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

(f) Exception to Assignments. I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of Utah Code Title 34, Chapter 39 Section 3 (attached hereto as Exhibit B). I will advise the Company promptly in writing of any inventions that I believe meet the criteria in Utah Code Title 34, Chapter 39 Section 3 and not otherwise disclosed on Exhibit A.

Confidentiality

4. **Conflicting Employment**. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5. **Returning Company Documents**. I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to paragraph 3(d). In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as **Exhibit C**.

6. **Notification of New Employer**. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

7. **Solicitation of Employees**. I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

8. **Representations**. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

9. **Arbitration and Equitable Relief**.

|  |  |
|---|---|
| (a) **Arbitration**. Except as provided in subsection (b) below, I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Utah in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be | _(initials)_ <br> **Initial** |

Confidentiality

entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.

(b) Equitable Remedies. I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2, 3, 5 and, 7 herein. Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.

*Initial*

## 10. General Provisions.

(a) Governing Law; Consent to Personal Jurisdiction. This agreement will be governed by the laws of the state of Utah without regard for conflicts of laws principles. I hereby expressly consent to the exclusive personal jurisdiction of the state and federal courts located in Utah for any lawsuit filed there against me by the company arising from or relating to this agreement.

(b) Entire Agreement. This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c) Severability. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d) Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(e) Construction. The language used in this Agreement will be deemed to be the language chosen by the parties to express their mutual intent and no rules of strict construction will be applied against either party.

(f) Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be enforceable, and all of which together shall constitute one agreement.

## 11. I acknowledge and agree to each of the following items:

Confidentiality

(a) I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else; and

(b) I have carefully read this Agreement. I have asked any questions needed for me to understand the terms, consequences and binding effect of this Agreement and fully understand them; and

(c) I sought the advice of an attorney of my choice if I wanted to before signing this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on this 5__ day of ___July_____, 2018___; provided, however, that the Company executed this Agreement solely for the purpose of entering into the covenants contained in Section 2(a).

OVERSTOCK.COM, INC.

By:_____

Its:_SVP Finance_____

EMPLOYEE

_____
(Signature)

Taunja Gainey
_____
(Print Name)

Confidentiality

## EXHIBIT A

### LIST OF PRIOR INVENTIONS
### AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| | | |

○ No inventions or improvements
○ Additional Sheets Attached

Signature of Employee: _____

Print Name of Employee: Taunja Gainey

Date: Jul 5, 2018

Confidentiality

**Exhibit B**

**34-39-3.   Scope of act -- When agreements between an employee and employer are enforceable or unenforceable with respect to employment inventions -- Exceptions.**
(1) An employment agreement between an employee and his employer is not enforceable against the employee to the extent that the agreement requires the employee to assign or license, or to offer to assign or license, to the employer any right or intellectual property in or to an invention that is:
    (a) created by the employee entirely on his own time; and
    (b) not an employment invention.
(2) An agreement between an employee and his employer may require the employee to assign or license, or to offer to assign or license, to his employer any or all of his rights and intellectual property in or to an employment invention.
(3) Subsection (1) does not apply to:
    (a) any right, intellectual property or invention that is required by law or by contract between the employer and the United States government or a state or local government to be assigned or licensed to the United States; or
    (b) an agreement between an employee and his employer which is not an employment agreement.
(4) Notwithstanding Subsection (1), an agreement is enforceable under Subsection (1) if the employee's employment or continuation of employment is not conditioned on the employee's acceptance of such agreement and the employee receives a consideration under such agreement which is not compensation for employment.
(5) Employment of the employee or the continuation of his employment is sufficient consideration to support the enforceability of an agreement under Subsection (2) whether or not the agreement recites such consideration.
(6) An employer may require his employees to agree to an agreement within the scope of Subsection (2) as a condition of employment or the continuation of employment.
(7) An employer may not require his employees to agree to anything unenforceable under Subsection (1) as a condition of employment or the continuation of employment.
(8) Nothing in this chapter invalidates or renders unenforceable any employment agreement or provisions of an employment agreement unrelated to employment inventions.

# EXHIBIT C

# 2020 Employment Agreement

# OVERSTOCK.COM, INC.

## EMPLOYMENT, CONFIDENTIAL INFORMATION
## AND INVENTION ASSIGNMENT, AND ARBITRATION AGREEMENT

As a condition of my employment with the Overstock.com, Inc., a Delaware corporation, with offices at 799 W Coliseum Way, Midvale UT 84047, its subsidiaries, affiliates, successors and assigns ("Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company and the Company's agreement in Section 2(a), I agree to the following:

     **1.** **At-Will Employment**. I understand and acknowledge that my employment with the company is for an unspecified duration and constitutes "at-will" employment. I also understand that any representation to the contrary is unauthorized and not valid unless obtained in writing and signed by the president of the company. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the company or myself, with or without notice.

     **2.** **Confidential Information**.

         **(a)** **Company Information.**

            **(i)** The Company agrees that, it will provide me with Confidential Information (defined below) of the Company that will enable me to optimize the performance of my duties to the Company. In exchange, I agree to use such Confidential Information solely for the Company's benefit. The Company and I agree and acknowledge that its provision of such Confidential Information is not contingent on my continued employment with the Company. Notwithstanding the preceding sentence, I agree that upon the termination of my employment in accordance with Section 1, the Company shall have no obligation to provide me with its Confidential Information. I understand that **"Confidential Information"** means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

            **(ii)** I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the exclusive benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company.

         **(b)** **Former Employer Information**. I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

         **(c)** **Third Party Information**. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part

to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.   <u>**Inventions.**</u>

(a)   <u>Inventions Retained and Licensed</u>. I have attached hereto, as **Exhibit A**, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as "Prior Inventions"), which belong to me, which relate to the Company's proposed business, products, or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or machine a Prior Invention owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process, or machine.

(b)   <u>Assignment of Inventions</u>. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks, or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in Section 3(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such invention.

(c)   <u>Inventions Assigned to the United States</u>. I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d)   <u>Maintenance of Records</u>. I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e)   <u>Patent and Copyright Registrations</u>. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights, or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments, and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights, or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or

papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

(f)   <u>Exception to Assignments</u>. I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of Utah Code Title 34, Chapter 39, Section 3 (attached hereto as **Exhibit B**). I will advise the Company promptly in writing of any inventions that I believe meet the criteria in Utah Code Title 34, Chapter 39, Section 3 and not otherwise disclosed on **Exhibit A**.

**4.**   <u>**Conflicting Employment**</u>. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

**5.**   <u>**Returning Company Documents**</u>. I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 3(d). In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as **Exhibit C**.

**6.**   <u>**Notification of New Employer**</u>. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

**7.**   <u>**Solicitation of Employees**</u>. I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

**8.**   <u>**Representations**</u>. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

**9.**   <u>**Arbitration and Equitable Relief.**</u>

(a) <u>**Arbitration**</u>. Except as provided in subsection (b) below, I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Utah in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be

**Tg**

Initial

| | |
|---|---|
| final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses. | |
|        (b) **<u>Equitable Remedies</u>**. I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2, 3, 5 and, 7 herein. Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance. | Tg<br>──────<br>Initial |

10. **<u>General Provisions.</u>**

       (a) <u>Governing Law; Consent to Personal Jurisdiction</u>. This Agreement will be governed by the laws of the state of Utah without regard for conflicts of laws principles. I hereby expressly consent to the exclusive personal jurisdiction of the state and federal courts located in Utah for any lawsuit filed there against me by the company arising from or relating to this Agreement.

       (b) <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

       (c) <u>Severability</u>. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

       (d) <u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

       (e) <u>Construction</u>. The language used in this Agreement will be deemed to be the language chosen by the parties to express their mutual intent and no rules of strict construction will be applied against either party.

       (f) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be enforceable, and all of which together shall constitute one agreement.

11. **<u>I acknowledge and agree to each of the following items:</u>**

       (a) I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else; and

       (b) I have carefully read this Agreement. I have asked any questions needed for me to understand the terms, consequences and binding effect of this Agreement and fully understand them; and

       (c) I sought the advice of an attorney of my choice if I wanted to before signing this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement on this 9    day of April_____, 2020____; provided, however, that the Company executed this Agreement solely for the purpose of entering into the covenants contained in Section 2(a).

**OVERSTOCK.COM, INC.**                    **EMPLOYEE**

*Carter Lee*

By:_____          _____
                                                      (Signature)

Name: Carter Lee_____          Taunja Gainey_____
                                                      (Print Name)

Its:_ Senior Vice President_____

**<u>EXHIBIT A</u>**

**LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP**

| <u>Title</u> | <u>Date</u> | <u>Identifying Number or Brief Description</u> |
|---|---|---|
| | | |

☐   No inventions or improvements
☐   Additional Sheets (email to hrdept@overstock.com)

Signature of Employee: _____
Print Name of Employee: Taunja Gainey_____
Date: Apr 9, 2020_____

**Exhibit B**

**34-39-3. Scope of act -- When agreements between an employee and employer are enforceable or unenforceable with respect to employment inventions -- Exceptions.**

(1) An employment agreement between an employee and his employer is not enforceable against the employee to the extent that the agreement requires the employee to assign or license, or to offer to assign or license, to the employer any right or intellectual property in or to an invention that is:

    (a) created by the employee entirely on his own time; and

    (b) not an employment invention.

(2) An agreement between an employee and his employer may require the employee to assign or license, or to offer to assign or license, to his employer any or all of his rights and intellectual property in or to an employment invention.

(3) Subsection (1) does not apply to:

    (a) any right, intellectual property or invention that is required by law or by contract between the employer and the United States government or a state or local government to be assigned or licensed to the United States; or

    (b) an agreement between an employee and his employer which is not an employment agreement.

(4) Notwithstanding Subsection (1), an agreement is enforceable under Subsection (1) if the employee's employment or continuation of employment is not conditioned on the employee's acceptance of such agreement and the employee receives a consideration under such agreement which is not compensation for employment.

(5) Employment of the employee or the continuation of his employment is sufficient consideration to support the enforceability of an agreement under Subsection (2) whether or not the agreement recites such consideration.

(6) An employer may require his employees to agree to an agreement within the scope of Subsection (2) as a condition of employment or the continuation of employment.

(7) An employer may not require his employees to agree to anything unenforceable under Subsection (1) as a condition of employment or the continuation of employment.

(8) Nothing in this chapter invalidates or renders unenforceable any employment agreement or provisions of an employment agreement unrelated to employment inventions.