THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TAUNJA LOVE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OVERSTOCK.COM, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [20] MOTION TO DISMISS AND COMPEL ARBITRATION**<br><br>Case No. 2:22-cv-00118-DBB-CMR<br><br>District Judge David Barlow |

This matter is before the court on Defendant Overstock.com, Inc.'s ("Overstock") motion to dismiss and compel arbitration. Taunja Love ("Love"), on behalf of a putative class of similarly situated members, seeks from her employer Overstock unpaid wages under the Fair Labor Standards Act ("FLSA") and Washington state wage acts.[1] Overstock moves to dismiss the Complaint for improper venue and to compel arbitration under the Federal Arbitration Act ("FAA").[2] For the reasons below, the court grants the motion to compel arbitration and dismisses the Complaint without prejudice.[3]

## BACKGROUND

Overstock is a corporation licensed to do business in Utah that describes itself as a "customer-focused online retailer."[4] Love represents a putative class of current and former

---

[1] Compl., ECF No. 2, filed Feb. 22, 2022.
[2] Def. Mot. to Dismiss & Compel Arbitration, ECF No. 20, filed May 10, 2022.
[3] After reviewing the briefs, the court finds the matter suitable for decision without argument. *See* DUCivR 7-1(g).
[4] ECF No. 2, at ¶¶ 14, 21 (citation omitted).

Overstock hourly call-center employees.[5] On February 22, 2022, Love filed the Complaint, alleging that Overstock violated the FLSA and various Washington state laws for a failure to pay wages and overtime.[6] Love alleges that Overstock enforced an illegal company-wide policy that required her and other hourly call-center employees to work in excess of 40 hours per week without compensation.[7] Love and putative class members seek "all unpaid overtime, liquidated damages, and other damages owed under the FLSA" and Washington state laws.[8]

Love signed an *Employment, Confidential Information and Invention Assignment, and Arbitration Agreement* ("*Employment Agreement*").[9] The relevant portion reads:

> **(a) Arbitration.** Except as provided in subsection (b) below, I agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Utah in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and I shall each pay one-half of the costs and expenses of such arbitration, and each of us shall separately pay our counsel fees and expenses.
>
> **(b) Equitable Remedies.** I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 2, 3, 5, and 7 herein. Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief

---

[5] *Id.* at ¶¶ 11–13.
[6] *Id.* at ¶¶ 11, 13, 68, 103.
[7] *Id.* at ¶¶ 3–5.
[8] *Id.* at ¶ 8.
[9] *See* Decl. of Marci Call ¶¶ 8–11, ECF No. 20, at 11–12.

2

and I hereby consent to the issuance of such injunction and to the ordering of specific performance.[10]

Overstock filed a motion to dismiss and compel arbitration and a motion to stay proceedings on May 10, 2022.[11] It argues that by signing the *Employment Agreement*, Love agreed to arbitrate disputes and that an arbitrator would decide issues of arbitrability.[12] The court granted the motion to stay on May 25 to allow for resolution of the instant motion to dismiss.[13]

## STANDARD

"At the motion to dismiss stage, the court accepts as true Petitioners' well-pleaded factual allegations and views them in the light most favorable to Petitioners."[14] Plaintiffs have the burden of showing proper venue.[15] As to arbitration, the Supreme Court has held that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*."[16] "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."[17] In ruling on a motion to compel arbitration, "courts must resolve 'whether the parties are bound by a given arbitration clause' and 'whether an arbitration clause in a concededly binding contract applies to a particular type of

---

[10] Ex. C, 2020 Empl. Agreement ¶ 9, ECF No. 20, at 25–26. Love also signed an identical employment agreement in 2018. *See* Ex. B, 2018 Empl. Agreement, ECF No. 20.
[11] ECF No. 20.
[12] *Id.* at 2.
[13] Order Grant. Def. Mot. to Stay 1, ECF No. 27, filed May 25, 2022.
[14] *Nu Skin Enters. Inc. v. Raab*, No. 2:21-cv-709, 2022 WL 2118223, at *1 (D. Utah June 13, 2022).
[15] *See Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2d 1051, 1058 (D. Kan. 2006).
[16] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original).
[17] *Id.*

controversy.'"[18] The Tenth Circuit also has made clear that "the question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable."[19]

## DISCUSSION

The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of . . . a contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[20] "Consequently, when deciding a motion to dismiss and compel arbitration, a court must first determine whether a valid arbitration agreement exists."[21] It is undisputed that an arbitration agreement exists because Love signed the *Employment Agreement* containing the arbitration clause,[22] and Love does not contest the overall contract's validity.[23] Instead, Love contends that her claims fall outside the scope of the arbitration clause and that the arbitration clause itself is unconscionable.

### A. The Arbitrator Should Decide Arbitrability.

Before the court can decide Love's claims, the threshold question is whether this court or an arbitrator decides arbitrability. Two Tenth Circuit cases are instructive. First, in *Belnap v. Iasis Healthcare*, a surgeon signed an employment agreement with the following language: "<u>Arbitration</u>. . . . [A]ny Disputant may . . . submit the matter to final, binding arbitration, provided that the issue is arbitrable under Utah law. *The arbitration shall be administered by*

---

[18] *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1250 (10th Cir. 2018) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *see* 9 U.S.C. § 3.
[19] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) (emphasis in original); *see Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).
[20] 9 U.S.C. § 2.
[21] *Singh v. DISH Network LLC*, No. 2:18-cv-00856, 2019 WL 3037882, at *2 (D. Utah July 11, 2019) (citing *BOSC, Inc. v. Bd. of City Comm'rs of City of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017)).
[22] *See* ECF No. 20, at 2; Pl. Resp. to Def. Mot. to Dism. & Compel Arbitration 2, ECF No. 31, filed June 14, 2022.
[23] *See* ECF No. 31, at 4–5.

4

*JAMS and conducted in accordance with its Streamlined Arbitration Rules and Procedures . . . except as provided otherwise herein.*"[24] The surgeon sued his employer for various claims and the employer moved to compel arbitration.[25] The employer argued that the clause showed clear intent that the parties had consented to an arbitrator deciding questions of arbitrability.[26] The Tenth Circuit held that by including the JAMS (Judicial Arbitration and Mediation Services) Rules, the parties "evidenced a clear and unmistakable intent to delegate questions of arbitrability to an arbitrator."[27] Because "the question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable," the court found that the agreement's plain language incorporating JAMS rules meant that the arbitrator, not the court, would decide.[28]

Second, in *Dish Network L.L.C. v. Ray*, the Tenth Circuit held that an arbitration agreement incorporating AAA rules showed a clear and unmistakable intent to have an arbitrator decide arbitrability.[29] The agreement specified that a "single arbitrator engaged in the practice of law from the [AAA] shall conduct the arbitration under the then current procedures of the AAA's National Rules for the Resolution of Employment Disputes."[30] The court noted that AAA Rule 6(a) "provide[d] that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the

---

[24] *Belnap*, 844 F.3d at 1276 (emphasis in original).
[25] *Id.* at 1276–77.
[26] *Id.* at 1277.
[27] *Id.* at 1279; *see JAMS Streamlined Arbitration Rules & Procedures* Rule 8(c), JAMS (June 1, 2021) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.").
[28] *Belnap*, 844 F.3d at 1281–82 (citing *Riley Mfg.*, 157 F.3d at 779); *see Casa Arena Blanca LLC v. Rainwater by Est. of Green*, No. 21-2037, 2022 WL 839800, at *1, 5 (10th Cir. Mar. 22, 2022) (holding that the incorporation of JAMS rules directed that an arbitrator decide arbitrability).
[29] *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018).
[30] *Id.* at 1242.

arbitration agreement.'"[31] Thus, the court was "persuaded that the . . . incorporation of the Rules clearly and unmistakably show[ed] the parties intended for the arbitrator to decide all issues of arbitrability."[32]

Similar to the agreements in *Belnap* and *Dish Network*, Love's arbitration agreement plainly incorporates arbitration rules. The agreement states that "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, *shall be settled by arbitration to be held in Utah in accordance with the rules then in effect of the American Arbitration Association*."[33] AAA Employment Arbitration Rule 6 states a nearly identical rule as that in *Belnap* and *Dish Network*: "The arbitrator shall have the power to rule on . . . the arbitrability of any claim or counterclaim."[34] As such, the court cannot override the parties' clear intent to bind themselves to arbitration, including the question of whether Love's claims are arbitrable.

In response, Love cites three cases for the proposition that the court should decide arbitrability. None control the result here. The first case, *John Wiley & Sons, Inc. v. Livingston*, is about an arbitration clause in a collective bargaining agreement.[35] But the case is distinguishable. Unlike Love, who concedes that she signed the agreement, the petitioner in *John Wiley & Sons* argued that it was never party to the agreement.[36] And the court recognized that the parties had bargained to "submit the subject matter of a dispute to arbitration."[37] Love also cites

---

[31] *Id.* at 1245 (quoting AAA, *Employment Rules and Mediation Procedures* Rule 6(a) (Nov. 1, 2009)).
[32] *Id.*
[33] Ex. C at ¶ 9(a) (emphasis added).
[34] AAA, *Employment Arbitration Rules and Mediation Procedures* Rule 6 (Nov. 1, 2009).
[35] *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47 (1964).
[36] *Id.* at 547.
[37] *Id.* at 558.

6

*Riley Manufacturing Co. v. Anchor Glass Container Corp.* for a presumption in favor of court review.[38] But *Riley Manufacturing* held that the question of arbitrability rested with the court only if the parties had not "clearly and unmistakably provide[d] otherwise."[39] Finally, Love cites *Hill v. Ricoh Americas Corp.* for the same proposition: that the court must decide whether "there is an enforceable contract to arbitrate."[40] But *Hill* then cites *Howsam v. Dean Witter Reynolds, Inc.*, where the Supreme Court held that the "*question of arbitrability* . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.[41]

*Belnap* and *Dish Network* post-date the cases cited by Plaintiffs and are both apposite and controlling. Because the arbitration clause plainly incorporates AAA Rules, the court finds that the parties clearly and unmistakably intended for an arbitrator to decide arbitrability. Additionally, "there is a strong federal policy favoring arbitration for dispute resolution."[42] For these reasons, the court cannot reach Love's arguments that the claims are beyond the arbitration clause's reach.[43]

### B. Unconscionability Claims

Plaintiffs also argue that the arbitration clause is unconscionable for two reasons. First, Love asserts that the provisions requiring her to pay attorney's fees even if she wins and one half of arbitration costs is unconscionable because she cannot vindicate her full range of remedies

---

[38] *See* ECF No. 31, at 5.
[39] *Riley Mfg.*, 157 F.3d at 779.
[40] *See Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 777 (10th Cir. 2010).
[41] *Howsam*, 537 U.S. at 83 (emphasis in original) (cleaned up).
[42] *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995) (quoting *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 465 (10th Cir. 1988)); *see Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) ("This presumption in favor of arbitrability also applies 'where a party bound by an arbitration agreement raises claims founded on statutory rights.'" (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985))).
[43] *See* ECF No. 31, at 5–10.

7

under the FLSA.[44] Second, Love asserts that the arbitration clause unfairly benefits her employer because the clause allows Overstock to seek preferred remedies through litigation while forcing Love and others to arbitrate.[45]

As a threshold matter, the court can review Love's unconscionability claims. The court decides enforceability of the arbitration clause when the "enforceability argument applies . . . specifically to the arbitration provision (such as a claim that the provision is unconscionable)."[46] Love contends only that the arbitration agreement is unconscionable; she does not assert that the *Employment Agreement* is unenforceable.[47] Thus, recognizing that a "party claiming unconscionability bears a heavy burden,"[48] the court addresses each claim in order.

### 1. The Provisions for Fee-shifting and Costs Are Unconscionable but Severable.

To start, Plaintiffs argue that the arbitration clause contains two unconscionable provisions—fee-shifting and payment of costs—because of the "effective vindication exception."[49] This exception allows courts to invalidate "arbitration agreements that operate . . . as a prospective waiver of a party's *right to pursue* statutory remedies" like fee-shifting provisions or "filing and administrative fees attached to arbitration that are so high as to make

---

[44] *Id.* at 11–12.
[45] *Id.* at 13–14. Love points to the provision requiring consent to exclusive Utah jurisdiction for disputes and Overstock's ability to seek injunctive relief for certain breaches. Ex. C at ¶ 10(a) ("I hereby expressly consent to the exclusive personal jurisdiction of the state and federal courts located in Utah . . . ."); Ex. C at ¶ 9(b) ("I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction . . . .").
[46] *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1209 (10th Cir. 2016).
[47] *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (requiring "the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene"); *Casa Arena Blanca*, 2022 WL 839800, at *5 (holding that when parties agreed that an agreement was formed, but the plaintiff challenges contract formation (as opposed to whether the agreement mandated arbitration) was a matter for the arbitrator); *Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1268 (D. Colo. 2019) (same).
[48] *Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.*, 325 F. Supp. 2d 1252, 1263 (D. Utah 2004).
[49] ECF No. 31, at 10.

access to the forum impracticable."[50] *Nesbitt v. FCNH, Inc.* is instructive here. The defendant in *Nesbitt* argued that the incorporation of AAA Rules superseded the agreement's express language that directed each party to pay for counsel.[51] In particular, the AAA Rules noted in *Nesbitt* allowed an arbitrator to award attorney's fees and let AAA reduce administrative fees.[52] The court concluded that even though the agreement cited AAA Rules, the agreement was "ambiguous regarding the fee award" because it expressly required plaintiffs to pay attorney's fees.[53] Accordingly, the court held that it was "unlikely that an employee in the plaintiff's position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum."[54]

Likewise, the arbitration agreement here directs Plaintiffs to pay one-half of arbitration costs and attorney's fees, while also incorporating AAA Rules.[55] Rule 39(d) states that the arbitrator may award "any remedy or relief that would have been available to the parties had the matter been heard in court" to include attorney's fees.[56] Rules 43–44 direct plaintiffs to the AAA's fee schedule, which caps administrative fees at $300 and requires that the company pay the arbitrator.[57] Even though these rules appear to supersede the arbitration agreement, like *Nesbitt*, this court finds it likely that a plaintiff faced with these costs and fees would be deterred from accessing the arbitral forum.[58] As a result, the court finds the provisions unconscionable.

---

[50] *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 377 (10th Cir. 2016) (emphasis in original) (cleaned up)); *see Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1233–35 (10th Cir. 1999).
[51] *Nesbitt*, 811 F.3d at 379.
[52] *Id.* at 379–80.
[53] *Id.* at 380.
[54] *Id.* at 380–81 (quoting *Shankle*, 163 F.3d at 1234 n.4) (internal brackets omitted)).
[55] ECF No. 20, at 17–18.
[56] AAA, *Employment Arbitration Rules and Mediation Procedures* Rule 39(d).
[57] AAA, *Employment/Workplace Fee Schedule: Costs of Arbitration* (Nov. 1, 2020).
[58] *See Nesbitt*, 811 F.3d at 380–81 (citing *Shankle*, 163 F.3d at 1234 n.4).

9

Overstock urges the court to sever any provision found unconscionable.[59] The court agrees.[60] Under Utah law, "contract provisions are severable if the parties intended severance at the time they entered into the contract and if the primary purpose of the contract could still be accomplished following severance."[61] Intent is determined by the contract's four corners.[62] Here, the court finds that Love signed a clear severability provision: "If one or more of the provisions . . . are deemed void by law, then the remaining provisions will continue in full force and effect."[63] Thus, the court severs the unconscionable portions: "The Company and I shall each pay one-half of the costs and expenses of such arbitration and each of us shall separately pay our counsel fees and expenses."[64] However, the remainder of the arbitration clause is enforceable.

### 2. Love Fails to Meet Her Burden to Show that the Litigation Carve-out Is Substantively Unconscionable.

Next, Love argues that the unilateral carve-out allowing Overstock access to Utah courts is "so one-sided as to oppress or unfairly surprise an innocent party," causing "an overall

---

[59] Def. Reply in Supp. of Mot. to Dism. & Compel Arbitration 8, ECF No. 33, filed June 28, 2022 (citing *Mantooth v. Bavaria Inn Rest., Inc.*, 360 F. Supp. 3d 1164, 1176 (D. Colo. 2019)); *see Sprouse v. Jager*, 806 P.2d 219, 224 (Utah Ct. App. 1991) ("In Utah, a provision of a contract is severable depending on the intent of the parties at the time they entered into the contract.").
[60] *See, e.g.*, *Mantooth*, 360 F. Supp. 3d at 1176 (concluding that the arbitration agreement's cost-shifting provisions are unconscionable and severing the offending provisions).
[61] *Addiction Treatment Ctrs., Inc. v. Shadow Mountain, LLC*, No. 2:16-cv-339, 2020 WL 2543238, at *4 (D. Utah May 19, 2020) (quoting *Sosa v. Paulos*, 924 P.2d 357, 363 (Utah 1996)); *see Grigsby v. Income Prop. USA, LLC*, No. 2:17-CV-1110, 2018 WL 4621766, at *8 (D. Utah Sept. 26, 2018). "As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Rent-A-Ctr.,* 561 U.S. at 70–71 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (internal brackets omitted)); *see Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020) ("[I]n an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone." (quoting *Rent-A-Ctr.*, 561 U.S. at 71)).
[62] *Sprouse*, 806 P.2d at 224; *see Larson v. Larson*, 687 F. App'x 695, 703 (10th Cir. 2017) ("[W]e determine the parties' intent from the words of the agreement as they are expressed within the four corners of the agreement, and enforce the contract in accordance with the plain meaning its language would be given by a reasonable person." (cleaned up)).
[63] Ex. C at ¶ 10(c).
[64] *Id.* at ¶ 9(a).

imbalance in the obligations and rights imposed by the bargain . . . according to the mores and business practices of the time and place."[65] Specifically, Love contends that *Employment Agreement* clauses 9(b) and 10(a) "explicitly exempt[] from mandatory arbitration those judicial remedies that [Love] is likely to need, whi[le] providing no such exemption for [Overstock]."[66] In support, Love cites *Patterson v. Nine Energy Service, LLC* for the proposition that such carve-outs are unconscionable.[67] In *Patterson*, the District of New Mexico held that a unilateral carve-out that exempted one party from mandatory arbitration in a loan contract was unconscionable because it forced the borrower to arbitration while it gave the lender access to courts.[68]

Here, the arbitration agreement allows Love to seek injunctive relief through an arbitrator.[69] Further, certain types of unilateral carve-outs are common business practice.[70] And unlike *Patterson*, Overstock's carve-out applies to just four provisions: confidential information, inventions, returning company documents, and solicitation of employees.[71] The carve-out does not target the claims that Love is most likely to need.[72] Indeed, Love fails to allege any claims that she would be unable to pursue through arbitration as opposed to courts.[73] Accordingly, the carve-out does not rise to the level of substantive unconscionability recognized in this circuit.[74]

---

[65] *C.R. England*, 325 F. Supp. 2d at 1263.
[66] ECF No. 31, at 13.
[67] *Id.* (citing *Patterson v. Nine Energy Serv., LLC*, 330 F. Supp. 3d 1280 (D. N.M. 2018)).
[68] *Patterson*, 330 F. Supp. 3d at 1309.
[69] Ex. C at ¶ 9(a); *see* AAA, *Employment Arbitration Rules and Mediation Procedures* Rule 39(d).
[70] *See, e.g.*, 2 *E-Commerce and Internet Law* §22.05(2)(M)(i) (Westlaw 2020) (carve-outs for intellectual property and small claims).
[71] ECF No. 20, at 16–18.
[72] *See Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191, 1236 (D. N.M. 2017) ("[A]n arbitration agreement is substantively unconscionable if it contains a unilateral carve-out that explicitly exempts from mandatory arbitration those judicial remedies that the drafting party with superior bargaining power is likely to need."); *Waltrip v. Pilot Travel Ctrs.*, No. 21-642, 2022 WL 2192892, at *15 (D. N.M. June 17, 2022).
[73] *See* ECF No. 31, at 13–14.
[74] *See, e.g.*, *Patterson*, 330 F. Supp. 3d at 1280.

## ORDER

For the reasons above, Defendant's Motion to Dismiss and Compel Arbitration is GRANTED. The court dismisses Plaintiffs' Complaint without prejudice.

Signed August 12, 2022.

BY THE COURT

David Barlow
United States District Judge